What's your argument next in Doyle v. United States 182814? Please proceed, Ms. Wiseman. May it please the Court, Anne Wiseman on behalf of the appellants. This case raises the question of whether records that an agency creates based on information it obtains in part from the Office of the President and that it uses to perform a core statutory function are agency records under the FOIA. The government insists that they must be treated as presidential to avoid constitutional concerns. But Congress has already provided a mechanism to protect the President's interests, the FOIA's nine exemptions,  and these basically under the President's control. Doesn't the President tell the Secret Service what to do with them and pretty much determine everything about them, as the D.C. Circuit held in a very careful opinion, Judicial Watch? No, Your Honor, because the Supreme Court and tax analysts provided a very clear, definitive, and narrow definition of control that looks solely at whether the records came into the agency's possession or were created by the agency. Was the tax analyst deal with this issue, which is namely the existence of an MOU by the President asserting control over certain documents? No, Your Honor, but there is no tax analyst doesn't answer the question that's before us. I respectfully disagree, Your Honor, because there's nothing in tax analysts that suggests the opinion is bound to its specific facts. Tax analysts derived its definition. One of the factors is whether it's in the agency's control, right? Yes. And the question before us, in part, is whether the President, through an MOU, through some other mechanism, can assert control that's within an agency of documents that are obtained by an agency. Yes, and our answer is the President cannot, Your Honor, because as long as the records Tax analysts didn't answer that question. Yes, but tax analysts modeled the definition of agency record after the Federal Records Act, and that definition clearly says it defines a record as one that is made or received in connection with the transaction of public business. And if you look at the Federal Records Act and its interplay with the Presidential Records Act, we think it's clear here that the control that the Supreme Court was talking about does not allow the President to override it, because under the Federal Records Act, if a record satisfies that statute, the President may not deem it a presidential record. The Presidential Records Act says that, essentially, the Federal Records Act trumps the Presidential Records Act. But realistically, I mean, realistically, aren't these presidential records? I mean, you know, one can argue between these acts and whatever, but the question before us, really, is this the kind of thing that FOIA wanted exempted, whether correctly or not, because they were presidential as against agency? And aren't these really things of the President? Respectfully, Your Honor, I disagree. First of all, there's no indication in any of the legislative history to the FOIA that Congress was looking to protect certain presidential information. And I think that's clear. But there is legislative history that suggests that Congress was concerned about overly intruding into presidential daily activities. Actually, no, Your Honor. To the extent that that quote comes from the Judicial Watch, and to the extent that the Judicial Watch was relying on the Armstrong case, if you look at the legislative history, what the legislators were actually talking about was the separation of powers concerns that could be raised by imposing a presidential record-keeping scheme on the President. There is nothing in the legislative history, and I have combed it many times, that talks at all about specific records. In fact, Congress was taking a functional approach. And I think this is apparent from the 1974 amendments to the FOIA, where Congress made express that the executive office of a president is an agency for FOIA purposes. Now, we know what they intended to include were only those EOP components that have responsibilities beyond simply advising and assisting the President. But the legislative history in both the House and Senate committee reports that indicates that they were essentially codifying SUSE. And when you look at SUSE, the Court said a record that was prepared expressly and solely to advise the President was still an agency record. Why? Because it was created or in the possession of an agency. Let me ask you a more practical question, because I've been scratching my head over this a little bit. What documents are you still trying to get? Essentially, we're trying to get what we've referred in our briefs and what I think both sides have referred to as visitor logs. But was there not a settlement in a separate case? There was a settlement in another case that Public Citizen brought, and that settlement involves those EOP components that are subject to the FOIA. And the government is not challenging that. They have agreed for those components that are agencies under the FOIA, they will make the records publicly available. I want to just point something else out, because you've been referring to these records as sort of innately presidential. But if you look at the Joint Appendix at 75 and 76, it lists the fields of information that are in the WAVES records that we're talking about. And I think what's striking there is that it doesn't even include the person who is having the meeting with the visitor unless that person is the person who requested access. You know, the information that is actually contained in these records. What happens if there's a national security or a visit that would disclose national secrets that are subject to some national security? Well, that is why the FOIA's nine exemptions are available. They cover Exemption 1. Then we would embroil the President of the United States or the Office of the President in litigation over exemptions. But that already happens now, Your Honor. There has been litigation over an assertion of the presidential communications privilege under Exemption 5, and the government has to come in and prove up its case. This case is no different from that. And I think what's striking here is that— Isn't that exactly what Congress wanted to avoid by exempting the President? Yes, but Congress did not exempt presidential information. Congress well understood that by making the EOP subject to the FOIA, it necessarily would mean information from the President, to the President, or about the President would be subject to FOIA. About the President. And what does about the President mean if it doesn't mean who goes to the President's house? Yes, we agree that that's information about the President. My point, Your Honor, is that Congress understood by making the EOP an agency for FOIA's purposes that that very kind of information would be subject to FOIA. But as the Soucy case explains, the President has the ability to rely on any one of the nine exemptions and also to assert a constitutionally based privilege. And what's striking here is that the government hasn't even tried to do that. It asks this Court to look beyond the policy choices Congress made, to look beyond the process that Congress put in place to protect these very kinds of interests and just jump to the conclusion that these must be presidential records. And we submit that, in fact, it is the government's position, asking this Court essentially to overrule the will of Congress that presents a separation of powers concern, not subjecting these records to the FOIA processes. Thank you. Good morning. May it please the Court, Sarah Norman from the U.S. Attorney's Office for the Southern District of New York on behalf of the appellate government. To answer Judge Calabresi's questions, these are effectively and realistically presidential records. Specifically, we're talking about presidential schedules and presidential visitor logs of the President, his immediate staff, and units of the Executive Office of the Presidency of the President  These are the records that Visits of the President's staff and others is also presidential? Yes, Your Honor. Yes. And that's reflected in the Suse case that my colleague mentioned, which was codified by Congress in the 1974 amendments as identified in the legislative history of the conference report. I mean, what is the scope of that? The scope of These visitor logs, does it include people who attend state dinners? So the WAVES and ACR records at issue in this case would include any visitor for any purpose where the request was made by essentially a presidential component of the Executive Office of the Presidency. You had, Judge Loya, you earlier mentioned visits to agency components. Those are no longer part of the case. Those have been produced pursuant to the settlement in the public citizen case. What's squarely before us are these logs. That's right. Of these visits to the President and his immediate staff. That's what's squarely before the Court with regard to the WAVES. That is what is left. The rest has been settled that these are all specifically to the President and his staff. Exactly. Specifically. And I don't think there's any dispute about that. I think the parties are in agreement that the only records that are left in the case are WAVES and ACR records for presidential components. There is one other category of records that are part of the case, and those are presidential schedules that were transmitted directly from the White House office, which is a presidential unit, to the Secret Service in connection with the President's visits to Mar-a-Lago during the relevant period of the FOIA request. Exactly. So that's a limited number of records, but they're functionally not different from the visitor records. In fact, as Judge Phelan noted below, those records present even greater, arguably greater separation of powers concerns because that's the President's entire schedule, and it's only the President or the Chief of Staff, I think, in one case. And not all visitor records. Would you, separate and apart from the issue that is raised here, would the government have available to it one of the FOIA exemptions? Well, I think that's in question, Your Honor. We would certainly argue, I assume, if we were put to the burden of justifying exemptions as to individual records, that the President's schedule would raise questions of presidential communications. But Crewe, one of the plaintiffs here, has argued in the District of Columbia, and successfully, that the names and dates of visits, those sort of bare pieces of information, don't implicate the presidential communications privilege, that the presidential communications privilege protects the communications themselves and not the individuals with whom the communications took place. Well, the presidential communications would come under Exemption 5. Exemption 5 is for privileges that a party could invoke in litigation, and presidential communications privilege is one of them. So I certainly would expect Crewe to argue in this case, if we got to that point, that these records are not, in fact, protected by the presidential communications privilege, and it's unclear how that dispute would resolve itself. But certainly they've argued previously. It would be easier, just because it would avoid all sorts of issues, if we were just fighting about an exemption, Exemption 5. I have to disagree that it would be easier, Your Honor. We're talking about a massive amount of records, which would be extraordinarily burdensome for the White House to have to process. And in the Cheney case, which was relied upon by the D.C. Circuit and Judicial Watch, that wasn't in the FOIA context, but that involved a subpoena for records, which was directed to the vice president, among others, and the district court and ultimately the Court of Appeals agreed, held that essentially the vice president wasn't in a position to object generally on separation of powers concerns, but rather had to assert individual privileges as to responsive records. And the Supreme Court disagreed and said that the Court of Appeals should have considered a writ of mandamus and should not have rejected issuance of the writ on the ground that the president or the vice president in that case had to assert privileges on an individual basis. And the reasoning in that decision is instructive here, because what the court said was that special considerations control when the president's autonomy over his office, the confidentiality of his communications are at issue, and those special considerations in coordination with the breadth, the over breadth of that request, that discovery request, caused the Supreme Court to reverse essentially the Court of Appeals decision. Similarly here, we have an extraordinarily broad request for what are really undisputedly presidential records. The president, and I mean that in the sense that these are the records that identify the president's schedule and his visitors and those of his staff. The other side has said these aren't necessarily of the president himself, but you're saying that they're very much presidential records anyway. They are. And I think it's undisputed that the president's prerogatives include the visitors to his staff and to units of the president whose sole duty or function is to advise and assist the president. I think these are clearly, if these records had not been provided to the Secret Service, there would be no question that these records. So can you provide us with part of the worry, the bigger picture here, is where is the line? So at what point can the president shield all records that he wants to shield, pursuant to an MOU or pursuant to some other mechanism? So I think in answering that question, I would direct the Court to the D.C. Circuit's opinion because the D.C. Circuit really struggled and thought deeply about that question. The D.C. Circuit's decision really rested on two grounds. One was that there was undisputed evidence of intent to control. The same is true here. But secondly, and even more fundamentally, as the D.C. Circuit noted, these records, if treated as agency records, would force the president into a choice, essentially a catch-22. The president would be in a situation of either forfeiting his confidentiality and his choice of advisors and visitors, or risking the security of himself, his family, the White House complex. And what the D.C. Circuit noted was that because Secret Service protection is mandatory, the president is statutorily required to accept it, it wasn't even clear that the president had the choice not to provide the records to the Secret Service. So in thinking about... Okay. So what you're saying is one line that could be drawn is Secret Service-related records that implicate the president's safety and the safety of other people at the White House. I would say the line is this. First, you have to have the control, the manifested control, the intent to control. That's required, and that's a significant piece. But in addition to that, you have to have, as the D.C. Circuit suggested, some sort of separation of powers concern that is created if the records are treated as agency records. Some concern that the president is being placed in an untenable choice to forfeit the authority of his office or the confidentiality of his visitors. And to arrive at that sort of criterion, the D.C. Circuit looked to a long history of cases, starting with Golint. You're relying not just on the result but very much on the reasoning of Judicial Watch. We are, Your Honor. Yeah. That's really, you're saying that that is the basis, that that opinion really has dealt with the whole issue underlying. We think Judicial Watch absolutely decides this case. Obviously, it involves the waves in ACR records. But it's a different circuit, so we can follow it or not. Certainly. But in terms of what you think we should do, that's the reasoning you're urging on us? Exactly right. And I think both pieces of the reasoning were central to the D.C. Circuit. You can't have one without the other. I mean, you couldn't prevail without both pieces. I think without both pieces, there is that concern that, you know, just through a memorandum of understanding, somehow the President could extend control over any document in the hands of the agency. Animating. Those are exactly the arguments that were made in Judicial Watch. Would you address, before you sit down, the matter of subject matter jurisdiction for the Presidential Records Act and the Federal Records Act? Sure. Why isn't there subject matter jurisdiction? There's a separate issue about whether there's a cause of action. There's no subject matter jurisdiction because there is, and I would point the Court to the Supreme Court's decision in Kissinger, which talked about there not being a basis for courts to exercise jurisdiction over causes of action under the Federal Records Act to preclude an agency from removing or destroying records. So it is a jurisdictional question in that sense, that in order to exercise jurisdiction, there needs to be a basis for federal jurisdiction. And the Federal Records Act. Pardon? That's described as a cause of action, not a failure to have a cause of action, not an absence of jurisdiction. You're saying Kissinger answers that question in a particular way? I would say Kissinger, as well as the Armstrong cases in the District of Columbia, do treat this as a jurisdictional question. The Court has to have a basis to exercise federal jurisdiction to order the agency to treat records in a certain way. I don't actually think there's a question as to it being a jurisdictional question as opposed to a question of stating a cause of action. There is no cause of action under the Federal Records Act for the type of action that's being challenged here. And I would just, to address a point that my colleague makes in her brief, there's ample authority for the procedure that the district court used here, which is to look at the amended complaint and look at whether it states a claim within the jurisdiction of the court. The court's not required to look at extrinsic evidence to determine whether a complaint states a claim that's within the court's jurisdiction. The court can look at just the allegations in the complaint itself. And with regard to that, I would point the court to pages 30 and 31 of the joint appendix, which in both paragraphs 63 and 67, identify the allegedly unlawful act of the Department of Justice and the Executive Office of the President as entering into an MOU that declares that the records of visits to agency components are under the exclusive ownership control custody of the President, Vice President, or originating EOP component. So the district court, in reviewing that allegation, did exactly what it was supposed to do and to determine whether by entering into that MOU  nothing in that MOU violates the Federal Records Act or the Presidential Records Act. Thank you. Thank you. Your Honors, this would be a very different case. If the government had invoked exemptions, if it had made its case in the district court as to why exemptions or privileges apply, and if they had been rejected, then there might be some more merit to the idea that the only way to protect the constitutional interests of the President is to find that these are presidential records. But that is not the record we have here. And I would also note this was not a case, ultimately, that was decided below on the question of control. Instead, it was decided on something that has been labeled special policy considerations. You didn't bring this case in the District of Columbia, presumably because it would have been foreclosed by Judicial Watch, right? It would have been, yes, and we believe the D.C. Circuit decision was wrong. We were not a party to the Judicial Watch case. So why should we carve out a different rule test outcome from what the D.C. Circuit carefully reasoned through in that case? Because the D.C. Circuit was wrong. Because the D.C. Circuit ignored clear controlling precedent from the Supreme Court on the very narrow meaning of control just within the concept of what is an agency record. We are not saying that evidence of control might be relevant to consideration of exemptions. You are essentially conceding that if we agree with Judicial Watch, then you lose. You're saying Judicial Watch is incorrect. Yes. We should create a circuit split and say control does not mean what they said, and therefore this is a different thing which should be covered specifically by the individual exemptions. You think that in a circuit split, if it went up, tax analysts would save the day for you? I think it might, but I also would draw the Court's attention to a recent decision of the Supreme Court that was handed down after briefing, the Argus Leader case, where the Supreme Court was looking at the D.C. Circuit's interpretation of Exemption 4. And what I think is important for this case is the Supreme Court criticized the D.C. Circuit for looking past the statutory language, past the purpose of the statute, and applying in essence its own policy choices. And that, we submit, is precisely what the district court did here. The district court applied a controlled analysis, a control analysis, and was not able to reach the conclusion that these records are presidential. So the case was actually decided on something called special policy considerations. Policy considerations that we think the Supreme Court has warned are not the providence of a court. You're telling us that if we are literalists, we should come out your way, but if we try to figure out what it was that this legislation was about, that's what the D.C. Circuit did, but you tell us we should look just to the narrow language of the statute. No, Your Honor, I think it's the narrow language of the statute as interpreted by the Supreme Court. And I think when you look at the tax analyst case, the court makes two overarching points. One is the narrow definition of control is necessary, the court said, to give full effect to the underlying purpose of what is a disclosure statute, to ensure that the broadest possible range of documents are made public. And the other was the specific reference to the definition of agency in the Federal Records Act. And if you bring that in here, that also means that that definition controls over an effort by the president to assert control. And so we think it is not just a question that the D.C. Circuit was wrong. The D.C. Circuit ignored not only the language of the tax analyst case, but its underlying rationale. And the D.C. Circuit, like the district court here, instead imposed its own policy choices and didn't even give the process that Congress put in place to protect interests a chance. It did not require, neither the district court nor the D.C. Circuit, required the government to prove up its case either that there are exemptions or that those exemptions are not adequate to protect its interests. And without that kind of a record, we think it would be error for this court to ignore the express will and language of the FOIA. Thank you very much. Thank you. We'll reserve the decision.